**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
NEOGENIX ONCOLOGY, INC.,

                                Plaintiff,

              -against-

PETER GORDON, MINTZ LEVIN COHN
FERRIS GLOVSKY and POPEO P.C.,
NIXON PEABODY LLP, DANIEL J. SCHER,
HARRY GURWITCH, and MAIE LEWIS, not
individually but as personal representative of the
Estate of BRIAN LEWIS,

                                Defendants.
----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 14-4427 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I. PRELIMINARY STATEMENT**

This case involves claims for breach of fiduciary duty and legal malpractice primarily against former law firms and attorneys who provided services to Neogenix Oncology, Inc. ("Plaintiff" or "Neogenix"). Neogenix is "a publicly reporting biotechnology company focused on developing genetically engineered cancer treatments." *See* Amended Complaint ("Am. Compl.") ¶ 1 [DE 35]. Neogenix alleges that Defendants Peter Gordon, the law firms of Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C. and Nixon Peabody LLP, Daniel J. Scher, Harry Gurwitch, the Estate of John Squire, and Maie Lewis (not individually but as personal representative of the Estate of Brian Lewis) (collectively, the "Defendants"), orchestrated a "cover up" which "prompted an SEC investigation" and ultimately forced Neogenix to "file for bankruptcy and sell its assets under court supervision." *Id*. ¶ 3.

Specifically, the Amended Complaint asserts that, as part of an effort to raise money for the company, the former Chief Financial Officer of Neogenix, Defendant Peter Gordon, initiated the Finder Fee Program, under which Neogenix paid commissions to anyone who brokered a sale of Neogenix stock, regardless of whether those persons were registered with the Securities and Exchange Commission ("SEC"). *Id.* ¶¶ 25-26. Neogenix claims that at the time, it did not know that the Finder Fee Program violated the Securities Exchange Act of 1934, which essentially prohibits anyone from selling securities without first being registered with the SEC, and, in turn, bars a company from compensating these unlicensed brokers. *Id.* ¶ 29. As a result, Neogenix brought this suit against (1) its former Chief Financial Officer for breach of fiduciary duty in instituting the unlawful Finder Fee Program, and (2) all former counsel, chiefly Mintz Levin Cohn Ferris Glovsky and Popeo P.C. ("Mintz Levin"), for legal malpractice in allegedly failing to provide proper and timely legal advice with regard to the unlawful Finder Fee Program. *See generally id.*

Pending before the Court are two letter motions filed by Plaintiff [DE 156, 157] which seek to compel various discovery responses from Defendant Nixon Peabody, LLP ("Nixon"). Nixon opposes both motions. *See* DE 158, 159. For the reasons which follow, Plaintiff's motion to compel supplemental interrogatory responses [DE 156] is GRANTED, in part, and DENIED, in part, while Plaintiff's motion to compel supplemental responses to it Requests for Admission [DE 157] is DENIED.

## II.  LEGAL PRINCIPLES

### A. *Federal Rule 33*

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "a party may serve on any other party no more than 25 written interrogatories. . . ." Fed. R. Civ. P. 33(a)(1); *see Pegoraro*

*v. Marrero* 281 F.R.D. 122, 128 (S.D.N.Y. 2012). Interrogatories "may relate to any matter that may be inquired into under Rule 26(b) . . . [and] is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ." *Id*. 33(a)(2); *see Trueman v. New York State Canal Corp.*, No. 1:09-CV-049, 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) ("Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions."). The general aim of this discovery device is to "expeditiously narrow the scope of the litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize expense." *Trueman*, 2010 WL 681341, at *2. To that end, the responding party is required to answer each interrogatory "separately and fully under oath." Fed. R. Civ. P. 33(b)(3); *287 Franklin Avenue Residents' Assn.*, No. 11-CV-976, 2012 WL 189922, at *9 (E.D.N.Y. May 24, 2012). Thus, the Rule explicitly requires the responding party to "provide the best answer they can based upon information within their possession." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 33(b)(3)); *Edebali v. Bankers Standard Ins. Co.*, No. CV147095, 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016) (quoting *Trueman*, 2010 WL 681341, at *2).

In order to ensure that each interrogatory is answered "separately" and "fully," *see* Fed. R. Civ. P. 33(b)(3), the responding party is required "to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories. . . ." *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 312 CV 1015, 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016); *see Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("In responding to interrogatories . . . a party is under a duty to make a reasonable inquiry concerning the information sought in the interrogatories, and a party's failure to describe his efforts to obtain the

3

information sought . . . renders his responses insufficient."); *Braham v. Perelmuter*, No. 3:15 CV 1094, 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served with interrogatories is obliged to respond . . . not only by providing the information it has, but also the information within its control or otherwise obtainable by it."). Where a party, despite conducting a diligent inquiry, is nevertheless unable to provide a responsive answer, any efforts utilized should be set forth in detail to ensure a sufficient response is interposed. *Id.*; *Zanowic*, 2000 WL 1376251, at *3 n.1. Further, "an answer to an interrogatory must be completed within itself and, it should be in a form that may be used at trial . . . [Therefore] [r]eference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive." *Trueman*, 2010 WL 681341, at *3; *Poulio v. Paul Arpin Van Lines, Inc.*, 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) (noting that other courts have held that a party may not incorporate deposition testimony or rely upon future depositions in lieu of complete responses to interrogatories); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997); *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. Jan. 30, 2003); Moore Federal Practice §§ 33.101, 33.103, & 33.106. In addition, "as new information comes into its possession, the responding party has a continuing duty to supplement their responses." *Trueman*, 2010 WL 681341, at *2 (citing Fed. R. Civ. P. 26(e)(1)).

Although a responding party is permitted to object to an interrogatory that it deems to be improper, the grounds for any such objection "must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see Pegoraro*, 281 F.R.D. at 128. It follows that "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of

relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009); *Davidson*, 215 F.R.D. at 77 ("Generalized objections that a discovery request is burdensome without resort to specific reasons is similarly insufficient to justify a refusal to respond.") (quoting *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592–93 (W.D.N.Y. 1996)). In order to effectively resist providing a response to an interrogatory, a party must show "specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Pegoraro*, 281 F.R.D. at 128–29 (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)).

### B. Federal Rule 36

Rule 36(a) provides, in pertinent part, that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). The 1970 Advisory Committee notes make clear that "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Notes to the 1970 Amendment of Rule 36.

Importantly, "Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y.

5

2003); *see T. Rowe Price Small–Cap Fund, Inc. v. Oppenheimer*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997); *Pasternak v. Dow Kim*, No. 10 CIV. 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) ("RFAs are not a discovery device at all, since [they] presuppose[ ] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.") (internal quotations and citations omitted) (alterations in original).

Instead, the "Requests and corresponding answers are expeditious, efficient resolutions of factual issues and may, to a considerable degree, when propounded early in the litigation, control the cost of discovery as well. More important, the binding effect of Admissions is intended to lend clarity to the presentation of disputed facts in the litigation." *Henry*, 212 F.R.D. at 77. Further, the burden rests with the requesting party to ensure that the requests are set forth "simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Henry*, 212 F.R.D. at 77; *see Booth Oil Site Admin. Group v. Safety-Kleen Corp*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000); *Diederich v. Department of the Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990); *T. Rowe Price*, 174 F.R.D. at 42. Once propounded, the respondent is required to admit the truth of the request unless there is a disagreement as to its truth. *Henry*, 212 F.R.D. at 77. In that instance, the party must either deny or object as to the nature of the request and any denial "must be forthright, specific and unconditional." *Booth Oil*, 194 F.R.D. at 80; *see* Rule 36(a). Any objection interposed must be directed at and specifically related to a particular request. *Henry*, 212 F.R.D. at 78. Thus, "[g]eneral objections without any reference to a specific request to admit are meritless." *Id.* (quoting *Diederich*, 132 F.R.D. at 616.).

**III.     DISCUSSION**

   *A.     Plaintiff's Motion to Compel Interrogatory Responses [DE 156]*

Plaintiff seeks to compel Nixon to supplement its responses to Interrogatories 1 and 2 contained in Neogenix's Second Set of Interrogatories. *See* DE 156 at 1. These two interrogatories are as follows:

> **Interrogatory No. 1:**
> If you contend that you advised Neogenix about risks associated with the Finder Fee Program, including risks associated with paying commissions or other transaction-based compensation to persons not registered with the SEC as brokers, dealers, or broker-dealers, please explain the basis for that contention, including, without limitation, the following: (a) the Neogenix employee, officer, or director with whom you communicated; (b) the Nixon attorneys participating in each such communication; (c) the date of each communication; (d) the content of each communication; and (e) what documents reflecting or recording such communications exist.
>
> **Interrogatory No. 2:**
> Describe what advice, if any, you provided to Neogenix about regulating or restricting the interactions between finders and investors or prospective investors in Neogenix, including, but not limited to, the following: (a) any policies or procedures regarding these issues; (b) the date on which such policies or procedures were adopted; (c) whether such policies or procedures were contained in a written document; (d) what documents reflecting or recording such policies or procedures exist; and (e) what monitoring or safeguards were implemented to confirm whether such policies or procedures were being followed.

*Id.*, Exhibit ("Ex.") A (Neogenix's Second Set of Interrogatories to Defendant Nixon). With respect to each of these interrogatories, Nixon has interposed responses which Neogenix asserts are insufficient. *See id.*, Ex. B (Nixon's Responses and Objections to Neogenix's Second Set of Interrogatories). Specifically, Neogenix asserts that Nixon's responses to both Interrogatories 1 and 2 are inadequate because: (1) generalized objections that an interrogatory is overly broad or unduly burdensome are insufficient; (2) Interrogatories 1 and 2, to the extent they constitute

"contention" interrogatories are not "premature;" (3) a generalized assertion that the information may be found in Nixon's business records and ESI cannot satisfy Nixon's obligation since, according to Neogenix, "Nixon must specify the appropriate documents from which the information sought can be derived[;]" (4) depositions are not an adequate substitute since "[e]ven if depositions may be used to develop the requested information, depositions are expensive propositions and verified answers to interrogatories can be a much more efficient way to obtain the evidence sought[;]" and (5) Nixon, as a corporate entity "is obliged to respond to the interrogatories not only by providing the information it has, but also the information within its control or otherwise obtainable by it."  DE 156 at 2-4.

In response, Nixon asserts that:  (1) Interrogatories 1 and 2 are overly broad since they "cover[ ] a 12-year period" notwithstanding that " Nixon only represented Neogenix for a period of approximately 27 months, from November 2008 through February 2011[;]" (2) "The individuals with knowledge that would allow Nixon to supplement its responses to the Interrogatories—namely, Mr. Feigin and Mr. Kass—are no longer employees of Nixon and are not under Nixon's control[;]" (3) Nixon has no way of providing sworn responses to Neogenix's interrogatories without obtaining the equivalent of sworn testimony from Mr. Kass and Mr. Feigin[;]" (4) "Neogenix, as well as the other parties in this case, [ ] intend to depose Mr. Kass and Mr. Feigin regardless of Nixon's responses to these Interrogatories.  At their depositions, Neogenix—as well as Nixon and all of the other parties in this action—can elicit detailed and sworn testimony regarding both the subject of the Interrogatories and related topics[;]" (5) "Neogenix's Interrogatories are premature contention interrogatories[;]" and (6) the burden of identifying documents from which some answers to Neogenix's interrogatories may be derived is the same for Neogenix as for Nixon, given that the type of information sought by Neogenix is

not confined to specific documents and may be found, if at all, throughout the parties' productions." *See* DE 159 at 1-5.

Nixon has also submitted the Declaration of Brian G. Flanagan, Esq., General Counsel and partner at Nixon Peabody, LLP. *See* April 19, 2017 Declaration of Brian G. Flanagan ("Flanagan Decl.") [DE 159-1]. In his Declaration, Attorney Flanagan states that both Samuel Feigin and Mark Kass "are not currently partners of or employed by Nixon" and that consequently "Nixon does not control Mr. Feigin or Mr. Kass and has no right or ability to compel them to respond to interrogatories or requests for admission served on Nixon." *Id*. ¶ 2. In addition, "[t]here is no joint defense agreement between Nixon and either Mr. Feigin or Mr. Kass, nor is there any other agreement between Nixon and Mr. Feigin or Mr. Kass giving Nixon the ability to compel their participation in the process of responding to Neogenix's" discovery requests. *Id*. ¶ 3. Indeed, both Mr. Feigin and Mr. Kass "are represented by David M. Schnorrenberg of Crowell & Moring LLP." *Id*. ¶ 4. According to Attorney Flanagan, following a conversation with Attorney Schnorrenberg, he was informed that neither Mr. Feigin or Mr. Kass would be made "available to Nixon" since Attorney Schnorrenberg "expected shortly to receive subpoenas from one or more parties in the litigation for deposition testimony of Mr. Kass and Mr. Feigin" and that "his clients prefer to provide testimony only once to all parties." *Id*.

Having reviewed the parties' respective arguments in conjunction with the relevant case law, the Court finds that: (1) in light of the time that has passed since Interrogatories 1 and 2 were interposed, they are no longer "premature;" (2) Feigin and Kass — the two individuals who purportedly have knowledge concerning Interrogatories 1 and 2 — cannot be characterized as typical "former employees." Rather, they are both attorneys and former partners of Nixon who have since severed all ties and who have secured their own independent counsel to represent

9

them in this litigation. As such, their interests, at this stage, cannot be said to be aligned with those of Nixon's. Moreover, since no legal relationship exists as between Feigin and Kass on the one hand and Nixon on the other, the Court does not find that Nixon possesses the requisite control over either Feigin or Kass to compel their responses — especially, where, as here, they are represented by independent counsel; (3) to the extent that former partners Feigin and Kass are in possession of knowledge relevant to Interrogatories 1 and 2 and because of the nature of their former roles as partners, to the extent information in Interrogatories 1 and 2 is known to the remaining partners, that information is to be provided. As to anything else, Plaintiff will need to seek such information through the depositions of Feigin and Kass.

In addition, the Court finds that the Interrogatory 1, as written, is overly broad both in its scope as well as its unbounded timeframe. Therefore, Interrogatory 1 shall be limited solely to the timeframe of November 2008 through February 2011 — the period of time corresponding to Nixon's representation of Neogenix. *See* DE 159 at 1. In addition, Nixon shall only be required to provide supplemental responses to subsections (a), (b) and (e). To the extent Neogenix seeks information pertaining to subsections (c) and (d), the proper course for securing such discovery is through depositions of Feigin and Kass.

Interrogatory 2 shall similarly be limited to the same timeframe.

### B. *Plaintiff's Motion to Compel Responses to Requests for Admission [DE 157]*

Plaintiff next seeks to compel Nixon to supplement "certain of its responses to Neogenix's First Set of Requests for Admission." DE 157 at 1. Specifically, Plaintiff requests that Nixon provide supplemental responses to Requests 3, 6, 9, 12, 31, 32, 34, 39 and 43. *See generally id*. Although, according to Plaintiff, Nixon has "fail[ed] to respond to th[ese] request[s]" because "[t]he individuals [attorneys Feigin and Kass] who may possess knowledge

required to answer th[ese] [r]equest[s] are no longer members of, employed by, or controlled by Nixon[,]" Nixon should nevertheless be compelled to supplement its responses since "[c]ourts have required an employer to consult with its former employees in order to respond to a request to admit." *Id*. at 2. In addition, Plaintiff maintains that "Nixon has an obligation to respond with information it can readily obtain, including with information from its former partners. The only data available to Neogenix indicate that the former partners remain within Nixon's control and available to it." *Id*.

In response, Nixon asserts that it cannot accurately admit or deny the Requests at issue without the benefit of the recollections of Mr. Kass and Mr. Feigin." DE 158 at 2. According to Nixon, such inability stems from the fact that "Requests 3, 6, 9, 12, 31, 32, and 34 ask Nixon to admit that ***Nixon never*** gave certain advice to Neogenix." *Id*. (emphasis in original); *see* DE 157, Ex. A (Requests to Admit). As such, Nixon claims that it cannot admit or deny that the firm never had occasion to give advice about finder payments" without first obtaining the "recollections" of Feigin and Kass. *Id*. Likewise "Nixon cannot admit or deny that ***Nixon never*** advised members of Neogenix's Board about the 'propriety' of paying finders without probing the recollections of the two lawyers most directly involved with Neogenix [Feigin and Kass]." *Id*. (emphasis in original). Nixon proffers the same argument with respect to Requests 39 and 43 which "ask Nixon to admit that at a certain point in time, Nixon knew that certain persons receiving commissions from Neogenix were not registered with the SEC." *See id.* Specifically, Nixon states that its "'knowledge' at particular points in time is that of its current and former lawyers." *Id*. Therefore, it "cannot admit that it did or did not have particular knowledge without determining whether its lawyers had such knowledge." *Id*. Further, Nixon contends that although it was required to make a "reasonable inquiry and to answer a request for admission if

11

the information it knows or can readily obtain is sufficient to enable it to admit or deny a request," it has met its burden where, as here, it has no control over Kass or Feigin and where both former partners have secured their own independent counsel of record "who has declined to make them available to assist Nixon in responding to the Requests." *Id*. at 2-3; *see* Flanagan Decl. ¶¶ 2-4.

As noted above, "Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." *Henry*, 212 F.R.D. at 77; *see T. Rowe Price Small–Cap Fund, Inc.*, 174 F.R.D. at 42; *Pasternak*, 2011 WL 4552389, at *5 ("RFAs are not a discovery device at all, since [they] presuppose[ ] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.") (internal quotations and citations omitted) (alterations in original). In the instant case, Nixon's primary argument as to why it is unable to supplement its answers to Plaintiff's Requests for Admission is precisely because it is not in possession of the information that would enable it to ascertain the facts needed to interpose proper responses. Indeed, in its opposition, Nixon maintains that attorneys Feigin and Kass — former Nixon partners with intimate knowledge of matters encompassing the Finder's Fee Program and the associated legal advice provided (or not provided) to Neogenix — are the individuals who are in the best position to answer these Requests. However, Nixon argues that (1) these individuals are no longer within its control since they have left Nixon's employ, (2) they have retained their own independent counsel and (3) no joint defense or similar agreement exists imbuing Nixon with authority to "claw-back" these two former partners. *See* DE 158 at 2-3; Flanagan Decl. ¶¶ 2-4. Moreover, Plaintiff does not contest these facts, but merely states that "[t]he only data available to Neogenix indicate that the former partners remain

within Nixon's control and available to it." DE 157 at 2. As previously pointed out, both Feigin and Kass are not typical former employees since they are both attorneys who are now represented by counsel. Flanagan Decl. ¶ 4.

Although Plaintiff has cited authority standing for the general proposition that a party is required to conduct a "reasonable inquiry," DE 157 at 2 (citing *S.E.C. v. Thrasher*, No. 92-CV-6987, 1996 WL 508318, at *5 (S.D.N.Y. Sept. 6, 1996)), it has not cited authority requiring an answering party to expand an inquiry to non-parties no longer within its control in the specific factual circumstances present here. To the contrary, at least some courts have found that "reasonable inquiry" does not generally extend to non-parties. *See Bernstein v. Principal Life Ins. Co.*, No. 09 CIV. 4925, 2010 WL 4922093, at *4 (S.D.N.Y. Dec. 2, 2010) ("The requirement of 'reasonable inquiry' does not generally extend to third parties, absent sworn deposition testimony of such third party.") (quoting *Diederich v. Dep't of Army*, 132 F.R.D. 614, 620 (S.D.N.Y. 1990)); *T. Rowe Price Small–Cap Fund, Inc.*, 174 F.R.D. at 43-44; *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 374 (S.D.N.Y. 1989) (denying motion to compel and recognizing that "plaintiffs have not brought to this Court's attention any authority demonstrating that a party's obligation to make 'reasonable inquiry' entails seeking information from a third party *absent sworn deposition testimony*.") (emphasis in original). Therefore, while it is beyond dispute that the "reasonable inquiry" standard requires that an employer make contact with "any of [ ] officers, administrators, agents, employees . . . or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response," *T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 43, the scope of the inquiry is not so broad as to always encompass those *former* employees who no longer have any ties to their former employer and who are otherwise non-parties to the action.

13

*See Morreale v. Willcox & Gobbs DN, Inc.*, No. 89 Civ. 5531, 1991 WL 107441, at *1 (S.D.N.Y.1991) (no obligation to interview former employees of non-party); *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 194 (D. Nev. 2010) (to the extent that "information, within the exclusive knowledge of nonparties, is required in order to comply with a request, defendant need not interview that person if they are no longer employed by or otherwise connected" with the employer) (quoting *Diederich*, 132 F.R.D. at 620). Indeed, even *S.E.C. v. Thrasher*, cited by Plaintiff, acknowledges that although it may be appropriate in some circumstances to make contact with a former employee such a step would generally only be required "when the former employee was readily available." *S.E.C. v. Thrasher*, No. 92 CIV. 6987, 1996 WL 507318, at *5 (S.D.N.Y. Sept. 6, 1996).

Here, Nixon made a good faith inquiry through Feigin and Kass' independent counsel to obtain their cooperation. *See* Flanagan Decl. ¶¶ 1-4. Despite these efforts, Nixon was rebuffed and was instead informed that both Feigin and Kass would only be made available upon being subpoenaed for deposition. *See id*. ¶ 4. As such, given the status of both Feigin and Kass as former employees in conjunction with the steps taken to communicate with them through counsel, the Court is satisfied that Plaintiff has met its burden to conduct a "reasonable inquiry." Nothing more is required. To the extent Plaintiff seeks further clarity as to the issues raised in Requests 3, 6, 9, 12, 31, 32, 34, 39 and 43, it is free to explore these areas at Feigin and Kass' depositions.

## IV.    CONCLUSION

Based upon the foregoing analysis, Plaintiff's motion to compel supplemental interrogatory responses [DE 156] is GRANTED, in part, and DENIED, in part, and Plaintiff's motion to compel supplemental responses to its Requests for Admission [DE 157] is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
September 22, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge